IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Fantasia Chandler,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SC House Calls, Inc.<br><br>　　　　Defendant. | C/A No.: 1:23-cv-03858-JFA-SVH<br><br><br>COMPLAINT |

Plaintiff Fantasia Chandler ("Plaintiff"), by and through her undersigned counsel, hereby brings the following Causes of Action for Breach of Contract, Breach of Contract with Fraudulent Intent, Section 1981 Race Discrimination/Racially Hostile Environment, and Defamation against Defendant SC House Calls, Inc. ("Defendant") based on the following allegations.

JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Aiken Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

PARTIES

3. Plaintiff Fantasia Chandler is an African American female and a citizen of the United States. Plaintiff resides in Aiken County, South Carolina within this judicial district.

4. Defendant SC House Calls, Inc. is a corporation, incorporated in and existing under the laws of the State of South Carolina. Defendant is located in Columbia, South Carolina, and conducts

business and operations in the State of South Carolina, to include Aiken County, South Carolina.

## FACTS

5. In or around August 2019, Plaintiff began her employment with Defendant as a Nurse Practitioner.

6. As a part of her duties with Defendant, Plaintiff provided in-home care, evaluation, treatment, and medical assistance for patients with limited mobility or transportation issues.

7. Plaintiff maintained her job duties to the best of her ability and continued to do so until her departure from Defendant.

8. Upon information and belief, because of her race, Plaintiff was hired at a lower salary than Caucasian nurses at Defendant and at a salary that would generally be unacceptable in the medical field for a Nurse Practitioner.

9. However, at the time of her hiring, Defendant assured Plaintiff that the low salary was acceptable and standard at Defendant because there were opportunities to receive bonuses that would set her in a high-earning trajectory.

10. Upon information and belief, Defendants did not have Plaintiff's similarly situated Caucasian counterparts accept such a low salary upon their hiring nor were they told that the bonus structure would supplement said low salary.

11. Plaintiff soon learned that the bonus structure was difficult to achieve, and she was convinced to accept the lower pay due to the racial animus of Defendants and their agents. Because of the bonus structure, many nurses were unable to achieve the promised off-set of income increase.

12. At the time of her hiring, upon information and belief, Defendant had a payment system through billing and coding which was based on every interaction with patients to include both

at home and telephone visits. Plaintiff asserts that Defendant's patients had different care needs and primarily included hospice care.

13. Plaintiff learned that the other nurse practitioners complained about issues that affected her like the billing and coding requirements, but she received reprimand and was targeted by her supervisors severely and egregiously about billing and coding due to her race and the racial animus held by Defendants and/or their agents.

14. Plaintiff states that Defendant's agents would encourage nurse practitioners to adjust their billing and coding invoices to appear that more billing was required. In turn, upon information and belief, Defendant and/or the nurse supervisor would receive more money for how often and for how long a nurse practitioner spent in the home of the patient.

15. However, because of her race, Plaintiff would receive reprimand for her practice of correctly billing patients for her visits where her similarly situated Caucasian counterparts would not face threats of adverse employment action, reduction in or denial of raises, or any other mistreatment because of billing and coding decisions. Plaintiff asserts that her counterparts received suggestions to complete this unethical task where she, an African-American, faced harsher supervision, frequent talks, and suggestions of insubordination for her correct billing.

16. Plaintiff asserts that her billing, coding, and record keeping were in compliance with Defendant's expectations but for the areas in which she was encouraged to go against for her integrity, professional oath, and moral compass.

17. Further, due to the racially discriminatory acts and omissions of Defendants and their agents, Plaintiff feared that she would ultimately face reprimand or a loss of her license if she complied with the expectations of her supervisors, in violation of her oath and standards of professionalism.

18. Upon information and belief, this practice became more aggressive following the Defendant's transition to South Carolina House Calls.

19. Further, Plaintiff states that the company made changes to the billing and coding due to COVID-19, and, most directly affecting the nurse practitioners and their supervisors, how employees will be paid for patient interactions. South Carolina House Calls would only incentivize or pay out video telehealth calls between nurses and patients.

20. Plaintiff asserts that telehealth calls were infrequent, thus when Defendant changed its practices, this caused additional hurdles to the bonus structure and intensified the effects of the latent race-based low salary Plaintiff received.

21. In around August 2021, Plaintiff requested a raise in her salary. In addition to being a quality employee for over a year, Plaintiff requested the raise after discovering that newly hired, less experienced Caucasian nurses were hired at a rate higher than what Plaintiff made.

22. Plaintiff asserts that these Caucasian new hires were recent graduates, did not make in-home visits, worked via telephone communication with patients, and/or had less overall medical experience than Plaintiff.

23. Plaintiff's supervisor, Jennifer Kistler (Caucasian Female), denied Plaintiff the raise and stated to the plaintiff that Mr. Matt Whitehead (Caucasian Male), Director of Operations, was informed of Plaintiff's request and also declined to approve a raise.

24. Ms. Kistler also stated to Plaintiff that salaries upon onboarding are non-negotiable and do not change. Plaintiff contends that her race, not a policy, procedure, or Plaintiff's quality of work was the cause of Ms. Kistler's statements.

25. Following the denied request for a raise, Plaintiff endured an increasingly racially hostile and racially discriminatory work environment because of her African-American race and in retaliation for requesting more, racially equal and experience-based pay.

26. Further, Plaintiff states that because of her race, she was disciplined and chastised more harshly than her Caucasian counterparts.

27. Defendant's agents made a habit of verbally reprimanding and counseling Plaintiff about the unethical billing practices she wished not to follow—in which the defendant wanted Plaintiff to falsify her time spent with patients. Plaintiff contends that her Caucasian counterparts were counseled but did not face threats to their employment, denial of raises, nor were they consistently monitored and pressured to make false statements for their refusal to alter billing.

28. Upon information and belief, Defendant made a habit of voluntarily transferring or moving Caucasian nurses to different departments or roles instead of reprimanding them, however, Plaintiff faced major involuntary changes to her employment because of her race and in retaliation of asking for a raise.

29. On or around December 2021, Plaintiff was informed that she would be reassigned to a different territory of patients and her current territory would be assigned to a newly-promoted, full-time Caucasian hire.

30. Since her hiring, Defendants assigned Plaintiff to a territory that was reasonably located to her home upon a mutual agreement at her onboarding. Plaintiff maintained the territory for nearly two years until Defendant acted in retaliation when they reassigned Plaintiff to a new area that would be over one hour away each way.

31. When Plaintiff inquired about the change, she was told by Defendant's agents that the promoted employee would have to drive too far. Defendant's racial animus and race-based

retaliation due to Plaintiff's wage concerns fueled this change, as Plaintiff discovered that she and the Caucasian new hire would have the same commute to the new location.

32. While Plaintiff continued to endure the racial animosity meted out to her by her supervisors, she learned that new, Caucasian, employees were either hired at a higher pay rate and that some current, Caucasian, counterparts who received raises, contrary to what the plaintiff was told by her supervisor. Because of her race, the plaintiff was now both underpaid and had to travel very far from her agreed upon location.

33. In February 2022, the pervasiveness of the racial hostility and discrimination became so oppressive that Plaintiff decided to resign and pursue alternative employment.

34. Despite complying and resigning from her employment in an acceptable manner and giving the defendant a month's notice, Plaintiff was furthered obstructed by Defendant due to her race.

35. Upon information and belief, following her leave, a potential employer received notification that Plaintiff was restricted from working with this company due to the signed Covenant Not to Compete ("covenant") agreement between Plaintiff and Defendant when Defendant was Agape Senior Care.

36. Upon information and belief, Plaintiff was in the process of obtaining the onboarding process of this potential employer when the offer was rejected pending the release from the Covenant with Defendant.

37. Upon information and belief, Defendant's changes to their name did not bring new employment agreements and Plaintiff was held to the same contractual obligations with Defendant South Carolina House Calls as she made upon her onboarding with Agape.

38. Plaintiff's signed covenant stated that employees were forbidden from employment with facilities that partnered with Defendant; however, the Covenant ultimately restricted Plaintiff

from working with any healthcare provider, regardless of the existence of a relationship with Defendant.

39. Upon information and belief, the potential employer was a new company to the state and had no relationship with Defendant, its providers, or its patients that would violate the restrictions of the Covenant as written.

40. Plaintiff, in an effort to understand the parameters of the overly broad and cumbersome covenant, reached out to Mackenzie Helms (Caucasian Female) who connected Plaintiff to Abby Miller (Caucasian Female) in Defendant's human resources department.

41. Upon information and belief, Ms. Miller stated that the covenant prevented Plaintiff from working for any other healthcare provider.

42. This covenant effectively forbade Plaintiff from finding employment as several potential employers rescinded her opportunity to interview and/or become employed due to the covenant.

43. Defendant enforced their overly broad and oppressive covenant to prevent Plaintiff from finding gainful employment because of her race and in furtherance of the racial harassment, hostility, discrimination, and retaliation meted to Plaintiff by Defendant.

44. Plaintiff is unaware of any similarly situated Caucasian employees who left the defendant and were restricted from continuing to find work in the healthcare field due covenant and the assertions of Defendant and/or its agents in enforcing the covenant to further harm Plaintiff because of her race.

45. Plaintiff attempted reasonable means to understand the Covenant and reach out to Defendant to have the Covenant released amicably. Per the language in the Covenant, Plaintiff should not

have faced as many hardships to find gainful employment in the medical field following her amicable end to her employment with Defendant.

46. However, due to the racial animus of Defendant, they, instead, doubled down on the incorrect interpretation of the Covenant, refused to notify Plaintiff's potential employer of her clearance to work with the company, and caused Plaintiff to further endure the residual impact of the racial animosity.

47. Since her resignation, Plaintiff has learned that she had been placed on Defendant's do not rehire list although she was never formally reprimanded, did not leave the defendant in a hostile or improper manner, and remained a faithful and ardent employee during her tenure with Defendant.

48. Since her resignation, Plaintiff had applied and interviewed for additional opportunities in her profession that were denied specifically because of the Covenant.

49. Plaintiff asserts that Defendant did not subject Caucasian former employees to the burdensome Covenant, did not refuse to release Caucasian former employees from the Covenant, and did not actively prevent Caucasian former employees from finding employment.

FOR A FIRST CAUSE OF ACTION
*Breach of Contract*

50. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

51. Upon information and belief, Defendant SC House Calls, Inc. maintains an employee handbook including policies and practices governing the conduct of employees and their business, and policies prohibiting discrimination and harassment.

52. Plaintiff and Defendant entered into a valid and binding contract whereby Plaintiff relied on Defendant's reassurance through its agents that Defendant would act pursuant to Defendant's'

policies and procedures regarding conduct in the workplace, anti-discrimination, harassment, and other applicable policies and procedures with respect to Plaintiff. Plaintiff relied on Defendant's reassurance that Defendant must follow its and procedures with respect to conduct in the workplace, anti-discrimination, and harassment, and other workplace policies and procedures.

53. Plaintiff performed her job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform their contractual duties by racially discriminating against and racially harassing Plaintiff.

54. All of these actions violate the contractual anti-discrimination provisions within Defendant's employment handbook (contract), its anti-discrimination and anti-harassment policies, workplace conduct policy, and other contractual policies and procedures of the Defendant. Further, Defendant failed to follow the above-referenced contractual policies and procedures, when it failed to treat Plaintiff equally to its Caucasian employees as stated more fully above.

55. . Defendant, and its agents, had a responsibility to ensure that Plaintiff would not be subjected to race discrimination. Defendant, through its agents, instead chose to do such, and failed to treat Plaintiff similarly to his Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiff by Defendant in the employment handbook and other contractual documents.

56. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

57. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

## FOR A SECOND CAUSE OF ACTION
*Breach of Contract with Fraudulent Intent*

58. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

59. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies, including the above-referenced anti-discrimination and anti-harassment policies, which together with their promissory and mandatory terms, form a contract with Plaintiff beyond the at-will employment relationship.

60. Defendant, by and through its agents, have breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

61. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme racial harassment and disparate treatment under the guise of protecting her from the same. Defendant ensured Plaintiff that she would not be subjected to the racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiff. It became readily apparent to Plaintiff that Defendant's false reassurances were fraudulent as Defendant's continual violations of its own policies demonstrated.

62. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

63. As a result of Defendant's race discrimination and exposure of Plaintiff to Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of its unlawful treatment of Plaintiff and fraudulent contractual breaches.

## FOR A THIRD CAUSE OF ACTION
*Race Discrimination in Violation of 42 U.S.C § 1981*

64. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

65. Plaintiff is a member of a protected class on the basis of her race (African American). Plaintiff was subjected to disparate treatment on the basis of her race due to Defendant and Defendant's agents racially disparate treatment towards her in violation of 42 USC § 1981.

66. Plaintiff alleges that this disparate treatment on the basis of her race while on the job was pretextual, as Defendant made promises to Plaintiff that Plaintiff would be protected from disparate treatment on the basis of her race. Plaintiff alleges that Defendant, through its agents, initiated discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional race discrimination based on her race to include that Defendant, by its agents, allowed Plaintiff to be discriminated against on the basis of his race to the exclusion of his similarly-situated Caucasian colleagues, who were not subject to close scrutiny, overly-burdensome reassignments, or a restrictive covenant.

67. Upon information and belief, Plaintiff alleges Defendant applied its policies, procedures, and standards to Plaintiff discriminatorily due to her race, including its evaluation, application, and other policies, in order to constructively terminate Plaintiff and further obstruct her from pursuing additional job opportunities.

68. In failing to protect Plaintiff from racial discrimination, Defendant and its agents acted with malice and reckless indifference to the federally protected rights set out under 42 USC § 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 USC § 2000e et. seq.), the South Carolina Human Affairs Law, and the United States Equal Employment Opportunity Laws.

69. Plaintiff alleges the Defendant, through its agents, initiated discriminatory practices against Plaintiff based on her race.

70. As a result of Defendant's race discrimination, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants due to their unlawful treatment of Plaintiff.

FOR A FOURTH CAUSE OF ACTION
*Defamation*

71. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

72. The Defendant published false statements of fact alleging that Plaintiff was guilty of misconduct.

73. The false statements were circulated among the community through the Defendant and caused Plaintiff to suffer material harm to her reputation.

74. The Defendant acted either negligently, recklessly, or with actual malice when disseminating the false statements about the plaintiff.

75. Therefore, the plaintiff is entitled to actual, general, and special damages as a result of emotional and physical injury, reputational harm, and mental suffering, as well as damages caused by employment setbacks arising from of the false statement's impact on her employment record.

76. Accordingly, due to the acts of the defendants, plaintiff is entitled to injunctive relief and civil damages, back wages plus interest, and payment for lost wages. Plaintiff is further entitled to actual and compensatory damages in the value and nature of her lost wages, benefits and front

pay, with interest applied thereupon, in addition to any liquidated damages, reasonable attorneys' fees and the costs of bringing this action.

JURY TRIAL REQUESTED

77. Plaintiff respectfully requests a jury trial.

PRAYER FOR RELIEF

78. WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiffs and issue its judgment:

   a. Declaring the actions complained of herein illegal.

   b. Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC § 1981 (race discrimination), breach of contract, and breach of contract accompanied by a fraudulent act, and the common laws of the State of South Carolina.

   c. Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of the Defendants' unlawful discriminatory actions taken as the result of Plaintiff's race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

   d. Awarding Plaintiff her costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

   e. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

__s/Donald Gist_____
Donald Gist, Esq. Fed. ID# 7178
Erica McCrea, Esq. Fed. ID# 13493
GIST LAW FIRM, P.A.
4400 North Main Street (29203)
Post Office Box 30007
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com
    ericamccrea.gistlawfirm@gmail.com

August 4, 2023